Good afternoon, everyone. We will call the first case, United States of America versus James R. Sedd. Mr. Kaczynski. Thank you, Your Honor. May it please the Court. Good afternoon, Your Honors. My name is William Kaczynski and I represent the appellant James Sedd in this case. I would ask to reserve three minutes for rebuttal. That request will be granted. Thank you, Your Honor. Your Honors, the first issue before the Court this afternoon is whether Mr. Sedd's warrantless arrest inside Ohio by state and local Pennsylvania police, who admittedly had an illegal police authority outside of Pennsylvania, violated his Fourth Amendment rights. The facts, very briefly, because I know the Court is aware of them, was that Mr. Sedd was indicted on three counts. One of conspiracy to distribute crack cocaine. The first was conspiracy. The second count had to do with a controlled purchase that took place on April 21st of 2006. And the second was a buy bust. That's the third count, was a buy bust that took place on April 27th of 2006. That's the one that's at issue in our first matter. And that is the one that took place outside of Pennsylvania and inside Ohio. In its opinion, the District Court correctly found that the arresting officers had that the fresh pursuit statute set forth by Ohio was violated because the police came in and did not honor the required arresting the person taking him before Ohio Magistrate. Mr. Kuczynski, in the District Court, you complained that the the arrest was illegal because the state police did not have authority under that statute. That's correct, Your Honor. Okay. And that is based primarily upon two cases that the District Court recognized, which I commend to this Court for their reasoning, although they're not binding, of course, on this Court. That is Commonwealth v. Savaree and Commonwealth v. Schaefer. Savaree was the Supreme Court case, Pennsylvania Supreme Court case, in which a gentleman was driving into Delaware and a Pennsylvania State trooper followed him and eventually arrested him for DUI and brought him back to Pennsylvania without taking him before Delaware authorities. In that case, the Pennsylvania Supreme Court said that suppression was required because of the fact that this was necessary as a demonstration of comedy to vindicate Delaware's sovereignty and to ensure future compliance with Delaware law and to safeguard the individual right to be free from unlawful seizures. Commonwealth v. Schaefer is an identical case except for the facts are that in that case the defendant went into New York and the trooper brought him back without any due process. And there I would ask the Court to consider the Superior Court's reasoning, which I think was very succinctly put. The trooper's authority to arrest in New York comes solely from the New York statute, which is similar to the one we had a conditional grant of authority subject to final validation by the New York criminal courts. And that validation meant that you had to go through the procedure of taking him before a local magistrate and giving him the opportunity to contest it and have bail. But if not validated, the Superior Court in Schaefer said, the arrest is void ab initio and thus without legal authority. So Judge Fischer, yes I am saying that this relies upon a violation of state law, but it's different than the normal cases that come before the Court. And it's certainly distinct from the case of Virginia v. Moore that the government asserts says that just because it's a state law violation, too bad there's no Fourth Amendment violation. And our position is that under the unusual and unique circumstances here, where we have extra that there is a violation and that therefore this arrest should have been suppressed. A violation of what law? Which law are you now hanging your hat on? That was I guess the purpose of my original question. Is it below you said it's illegal under Pennsylvania law, but your brief seems to allege that it was illegal because he wasn't taken before a magistrate in Ohio and therefore illegal under Ohio law. I think under Ohio, Pennsylvania, and federal law. Ohio, the statute, Pennsylvania, both of the cases that I cited held that Pennsylvania law requires suppression. In federal law, I would argue the Fourth Amendment. And very specifically, Your Honor, and I don't mean to quote, but it's only two sentences, our argument relies upon the following. The concept of Fourth Amendment logically presupposes an exercise of lawful authority by a police officer. When a law enforcement official acts beyond his or her jurisdiction, the resulting deprivation of liberty is just as unreasonable as an arrest without probable cause. And that language comes from the cases I've cited in my brief. Foster, Simon from the DC Circuit, Atwell, Ross V. Neff from the 10th Circuit. All of these were decided before Virginia v. Moore, were they not? They were, Your Honor. And we have a violation of a statute in Virginia versus Moore, do we not? You did, but it was just a violation of whether a police officer should arrest someone or whether he should write a citation. It had nothing to do with principles of comity, sovereignty, prerogative of a sovereign state, and I think that takes it to a different level. The government, I asked the court to be very cautious with the government's argument because the government, as I read its brief, is asking the court, and again I take the liberty of quoting one sentence, as I understand the government's position, it's based solely on probable cause. The government says on page 17, the determination of whether a Fourth Amendment violation has occurred requires application of the probable cause standard to the facts as presented to the district court. In other words, the probable cause. So in other words, if there's no probable, if there's probable cause to arrest, then nothing else matters. Well, I think that argument is severely mistaken, and here's why. In this kind of a case, first of all, as the 10th Circuit has succinctly noted, avenues to extended jurisdiction must come from the legislature, not the courts. Second, the government's analysis is result-oriented under these circumstances. I can't ever imagine any extraterritorial bypass where there's not going to be probable cause, because by definition, the police are on the scene and they're orchestrating it if it's a bypass. Well, just because there's probable cause doesn't mean that it's ipso facto reasonable. There could be other factors that make it unreasonable, right? You're exactly right, Your Honor, and that's my backup argument. If the court does not accept my per se argument, then I would submit to the court, rather than swinging to the government's argument that if there's probable cause, forget any other analysis, I would ask the court to consider the totality of the circumstances. And I found that best, because there don't seem to be a lot of circuit cases talking about this, I found it best articulated in United States versus Atwell, which I've cited in my brief. And in Atwell, talking about an inter-jurisdictional type of a infraction, the court looked at nine different factors. And I'd like to go, if I could, very briefly through those, because only two of those factors argue for reasonableness in this case. Number one is probable cause. We concede that. Number two, the degree of police compliance with state law. Here, there was none. Three, the fact that the police are acting between political subdivisions of the same state. Well, that's not applicable here. It's much more grievous here, because they're crossing state lines to engage in the activity. Number four, presence of exits in circumstances. There were none here. Number five, location where the crime occurred. It occurred in Pennsylvania. I suppose that factor weighs toward reasonableness, but I'm not sure. Six, officers' knowledge of users without authority. And I think the record, and I've indicated in my brief, shows, at best, willful blindness on the officers. They didn't care. They didn't even ask. They were with, the Pennsylvania State Troopers were the ones that testified at the suppression hearing, but they were with four or five officers from Sharon, Pennsylvania. As Judges Hardiman and Fisher undoubtedly know, Sharon is right on the border. These are local officers. And to imagine that local officers don't know that a town, an actual town of Masary, is not in Pennsylvania, to me, it just is clearly erroneous. The inferential leap is not justified. Well, even if you want on this suppression issue, there's still enough evidence to convict on the other two counts. I agree. I agree, Your Honor. You're exactly right. This is going to go toward mitigation of sentence, maybe ultimately. Do you want to spend any of the sentencing arguments that you've made? Yes, sir, if I might. Very briefly, Mr. Sedd submits that the courts recognize sentencing entrapment or manipulation as a basis for sentencing mitigation. And the rationale for my request... You know, by the way, what is this concept of mitigation relief which you have put before the court? I can't find that. I can find departure. I can find variance, but I Your Honor, I guess it really is a weasel word. I read Vampire Nation very carefully, but I'm still kind of confused between variance and departure and so forth. So mitigation relief is my term for everything. But that, although I did discuss the variance versus... But which one are you really asking for? Two different things, Your Honor. And they are two different things. Right, right. So how do you... I am asking for variance under 3553A. Okay. Your Honor. And what I'd like to distinguish, if I can, is sentencing entrapment versus sentencing factor manipulation because the government doesn't seem to believe in the latter. But I've set forth cases that they're distinct. And the reason it's important for me to make this point is because I think Mr. Sedd has an unusual case. And normally the court, with respect to reasonableness, I know what my burden is. And it's heavy. But sentencing entrapment focuses on predisposition. And it deals with, you know, where you have an actor who's predisposed to commit a lesser offense, but the government entraps him into committing a greater offense. Whereas sentencing factor manipulation is where the government stretches out an investigation to increase the sentence. I think the government addressed the first in its brief, but it didn't address the second. And my argument on the second is very simple. There was absolutely no evidence in the record to show any investigative purpose whatsoever in making that second buy. The first buy, I submit, the trooper was disappointed because it didn't hit 50 grams, which automatically kicks it up to 10 years. And that's why there was a second. Now, that's not what... It doesn't come out explicitly in the evidence, but I think that it's a fair inference. So I think Mr. said, for reasons I stated in that sentencing entrapment argument, if you weigh the evidence, the only thing weighing against him was his statements that he could deliver this. Everything else, 49 years of no drug sales, argue the other way. And for that reason, I think the court clearly erred. Okay. Wait a minute. Don't say that quite yet. You say there's nothing else in the way. Don't we have an express finding by a fact by the district court that he was not... that he was predisposed? Absolutely, Your Honor. That's correct, but the only fact that... The district judge said, I agree with the jury. You argued entrapment to the jury, and I agree with the jury that you were predisposed. Now, what are we going to do about it? What's the review of that? Clear error, Your Honor. But I would just urge the court to consider the fact that there's nothing to back up the judge's finding other than the statements of Mr. said, which I submit were puffery. If you look at all the evidence to the contrary, at 49 years, the guy has never been arrested before for drug dealing. He's a crack user, and you had three He's a crack user. He's a crack head. And finally, the district court also had a contradictory finding in its statement of the reasons, paragraph 8, the district court said there's a paucity of evidence that this guy committed any large-scale drug sales in the past. So I think the court erred on that. Thank you. We'll have you back on rebuttal. Mr. Eberhardt. May it please the Court, Robert Eberhardt, Assistant United States Attorney for the government as the appellee in this case. This was a case about fresh pursuit, and contrary to my colleague's argument, I think what Mr. said... Fresh pursuit, did you say? Fresh pursuit. Ohio law permits a Pennsylvania police officer to make an arrest when that arrest follows fresh pursuit. What essentially Mr. said is arguing, and is arguing before this court, is that he was not promptly arraigned in the state of Ohio. Two cases that are being argued to this court. One, the Pennsylvania Supreme Court decision in Sadvari. Well, before we leave the fresh pursuit issue, how can something, how can you describe this as a fresh pursuit which involves urgency, lest somebody escape, when this is a situation involving a sting over which the police have complete control, and also a situation where there's no reason to believe that both, that everybody involved was not going to go back home to where they live in Pennsylvania. And indeed, Your Honor, the court found, and the record supports, that the police officers thought they were in Pennsylvania when they made the arrest. And that was a reasonable determination by the court, and based on the evidence in the record, a reasonable finding of fact. The troopers thought they were in Pennsylvania. There was a lot of argument in the district court in the motion to suppress over where the takedown occurred. They were not on a highway. They were in a parking lot. The state trooper... This is an answer to the question about how this is a fresh pursuit case. I'm going to get to that. It is fresh pursuit. It couldn't be fresher in my view because the crime was ongoing. It was an attempt to sell crack cocaine to undercover police officers that was initiated in Pennsylvania. And the record actually establishes that Mr. Sedd, who was bragging on the recorded tape conversations about how many deals he had done. He had done small deals, big deals. On the day of the proposed sale in Pennsylvania, which was supposed to occur at the Shenango Mall, which is about a mile or two inside Pennsylvania, he all of a sudden changes and says it's going to occur the way the prior sale occurred on six days earlier. So the pursuit occurs because Mr. Sedd and Mr. Grannison, who is really in the eye of the police officer, the reason for the second sale, goes into Ohio to get the crack cocaine from Mr. Grannison. Grannison and Mr. Sedd come back toward Pennsylvania and are stopped because the state troopers believed they were at that point in Pennsylvania and crossed over the border. So there's a reasonable mistake by the officers here. But even if their mistake is made, the Ohio statute permits the arrest to occur. And the issue that I've relied upon here, there was no Fourth Amendment issue. The Fourth Amendment was not raised in the Pennsylvania Supreme Court or in the lower court. And in fact, Professor Lefebvre has said the Sadvari case is a very minority view. An appearance issue, which is really the issue in Sadvari, is an issue that does not involve a fundamental right, especially where the defendant receives a prompt appearance, as he did in this case, in the state where he was returned, in Pennsylvania. So there's no violation of anything, even a McNabb-Mallory rule application. But isn't there at least a violation here of Ohio law? Only that part of Ohio law with regard to appearance. But that isn't it. Nevertheless, it's a violation of the law. I readily accept that there's a violation of Ohio law on its face. The First Circuit, the Fourth Circuit, the Eighth Circuit, the Ninth Circuit, the Tenth Circuit all read Virginia versus Moore the way the government argues in this case, which says essentially that a violation of state law does not automatically raise a reasonableness or a Fourth Amendment issue. Moore was decided on April 23rd, 2008. The suppression hearing in this case occurred on March 6th of 2008. Since the decision in Virginia versus Moore, and I filed a 28-J letter to advise the court of a few additional cases that have come to the government's attention, Virginia versus Moore has found peace in the Fourth Amendment arena as an appropriate analysis of when, under what of a violation of state law may be a consideration in determining whether or not there was a Fourth Amendment violation. I would point out that the Tenth Circuit, in a case called Gonzales, has found that only when the constitutional test at issue requires an examination of the pertinent state law or interests does it become involved in the calculation of whether or not it's a reasonable search or seizure under the Fourth Amendment. And the examples that were given by the Tenth Circuit were inventory searches, which the Supreme Court has particularly pointed out require an application of a state law procedure with regard to inventorying a vehicle or other property subject to the inventory statute. And I would point out that other than exceptional circumstances, there's been no case which has applied Virginia versus Moore in a case that denigrates the primary requirement of the Fourth Amendment, and that is probable cause requirement. I would point out a few additional facts that are important. SED argues that the troopers had time to respond, and that is totally belied by the record. In fact, the district court found that almost immediately the police officer had to respond to a change in plan. So this argument that the police had plenty of time to anticipate the possibility of being in Ohio at the time of the arrest or the takedown, that's belied by the record, I suggest. In fact, the district court found that there was a sudden change of plan. The Shenango Mall was two miles inside of the Pennsylvania border, and I would suggest that that in and of itself was reason for the police to believe that there was going to be a Pennsylvania state case that would be based upon an arrest in Pennsylvania. I would also point out that this court has already on several occasions seen that a violation of state criminal procedural rules and U.S. versus PRIMO, which admittedly is non-precedential, but it reflects the fact that a rule of procedure with regard to leaving an inventory at the time of a execution of a search warrant, a violation of that state criminal rule of procedure, was viewed by this court as not raising a Fourth Amendment issue. The reality is the district court was presented with a Fourth Amendment argument, and now we have an argument of state law based on Pennsylvania Supreme Court decision, pre-Virginia versus Moore. And I would recognize that Pennsylvania law, as we are here today, remains the the Sadvari case. However, in light of Virginia versus Moore, I would suggest that the Pennsylvania Supreme Court may have second thoughts. Mr. Eberhardt, on the totality of the circumstances test, if that's the analysis that is to be argues that they win under that test, that the circumstances favor said, as opposed to favoring the government. Do you want to comment on that? If the court would apply a totality of the circumstance to the totality of the facts of this case, what are clear is that the police officers were acting not only in good faith, but in reasonable good faith, based on the fact they believe they were in Pennsylvania. They did not act in any way as if they were believe they were in Ohio. So there is no flagrant violation of Ohio law. There was no indication that the police officers were aware that they were in Ohio, and that they ignored that. The reality is they thought they were in Pennsylvania. In fact, one of the troopers who test, the two troopers who testified, one the supervisor, the other the undercover police officer, both felt that they were in Pennsylvania. In particular, the supervising trooper indicates that he had been involved in state wiretap situations, and that he was well aware of the need to be inside Pennsylvania when engaging in that kind of investigative activity. I would suggest that the investigative purpose here, in reality, was to get to Grandison. Mr. Grandison was the source. It was his potential criminal activity and responsibility that was of importance to the police in this case. And examining the totality of the circumstance, I would suggest that probable cause is number one, without any doubt. And there can be no doubt that there was probable causes even conceded by Mr. Sedd in this case. I would also point out to the court that the argument with regard to the violation of the Ohio statute, that being the arraignment or appearance statute, was not raised in this court until the reply brief. And the argument that is being made here, with regard to violation of Ohio law, which was raised in the district court, was focusing on a Fourth Amendment violation and not upon a violation of state law. In sum, I would suggest to the court that on the issue of the suppression and the district court had full and adequate factual basis for concluding that this was a fresh pursuit case. The court makes very clear that hot pursuit is different than fresh pursuit. And that fresh pursuit does not require the kind of wild police chase that we might envision. It requires only that there be a continuous pursuit following the engagement in criminal activity. You want to comment on sentencing entrapment in the context of this case? Well, I think briefly the response to that argument is that the district court heard all of this. Mr. Sedd testified at trial and I spoke to trial counsel for the government about this just last week. There was a question of whether or not the district court was going to charge the jury with regard to entrapment. But the court did. And the entrapment defense was presented to the jury. The jury rejected it. And the district court not only knew that, but also heard the tapes of all of Mr. Sedd's conversations with the confidential informant. And Mr. Sedd's argument that he was entrapped and that he was not predisposed is certainly belied by the record in this case. There are certain occasions where Mr. Sedd, in talking to the confidential informant, says, I've done small deals, I've done big deals, I can do any side deal. In fact, Sedd is the one who tried to get the state trooper to cough up $10,000 for a bigger deal. And the police officer said, no, I can't do that big of a deal. I'm going to do the $5,000 deal. So this argument that there is lack of predisposition, that indeed, this is more than puffery. This is an attempt to sell on the basis of an argument that he is ready and willing to engage in criminal activity involving as much as $10,000 worth of crack cocaine. And I think the investigative purpose here is fairly clear. Granison received a 5K. He was very much of an asset eventually to the government. And he was the focus of this particular investigation. And Mr. Sedd was one who prompted the investigation to go to a bigger and bigger sale. And I don't think that whatever the terms are, and I'm a little confused myself by the entrapment argument, whether it's a variance, whether it's a request for a departure, the district court had a full and complete review of the facts of the case. If there are no other questions, I'll rely on the brief on other aspects. Thank you, Mr. Everhart. Mr. Kaczynski. Thank you, Your Honor. Your Honor, whether we're talking about fresh pursuit or hot pursuit, I think one thing we have to agree on, we can all agree on, the crime has to occur first. And in fact, the district court on page 6 of its opinion says, quote, it is recognized, in talking about common law fresh pursuit, it is recognized as being satisfied whenever an officer's attempted apprehension of a felony suspect was diligently undertaken after the commission of an offense and continued in a matter that was not significantly interrupted. The offense was consummated in Ohio. It began in Pennsylvania, though. It did begin in Pennsylvania. But the argument that Mr. Everhart made about there being no reaction time, I differ on what the record shows there. Well, there was enough time for the police to get in position in Ohio. Right. So there was at least 15 minutes or something. Right. And it depends on what relative time span we're using. But initially, it was supposed to occur within Pennsylvania. It was, Your Honor. But six days earlier, they had the same situation where Granison wanted to move it to Ohio, and it was entirely predictable. And his car during the whole operation was being, was under aerial surveillance. In fact, one of the troopers passed up one of the defendants on the way into Ohio after they all got the call, okay, we're going back to Mazury, Ohio. So it wasn't as though it were a last minute thing. The problem that I have in terms of policy is that if the court accepts a government argument that basically probable cause is the tail that wags the dog here, then, you know, you have a situation where you're encouraging this type of cross-border police activity, and you may have police in Ohio that don't know that an operation is going on, and that's extremely dangerous. But doesn't it make sense, though, if a crime begins in one jurisdiction and it continues into another? Are you saying that the law enforcement officers have to stop? Not at all, Your Honor. Because this crime began in Pennsylvania, continued for a period of time, and then used the word consummated in Ohio. Correct. Why can't police from one county follow into another county? When the crime begins in one locale and moves to another locale, you're saying they need to shut it down right at the border? No, not at all, Your Honor. I guess what I'm saying is that there has to be compliance with the law of the state into which you're going. And in this case ñ Well, here, the fresh pursuit statute, it says it does not necessarily imply instant pursuit, but pursuit without unreasonable delay. That's what the Ohio statute says. Now, I agree with you when you say they didn't present them to a magistrate. That's a different point. Right. I mean, they admitted a violation of that. Your Honor, my only response is that I think that the district court clearly erred in finding fresh or hot pursuit because I've never ñ I can't conceive of a situation in which the police are set up in a locale and it's considered fresh pursuit going into that locale where basically they've orchestrated a trap for these guys and the guys fell into the trap and they didn't follow them there. They were there ahead of time, or at least part of the force was there ahead of time. And it's part of my argument that the district court erred in making that determination of fresh pursuit because the facts didn't warrant it. Okay. Thank you, Your Honor. Any other questions? Okay. We thank both counselors. Some interesting issues in this case, and we'll take the matter under advice.